(69 App. Div. 188.)

## BACKES v. CURRAN et al.

(Supreme Court, Appellate Division, First Department. February 21, 1902.)

1. INJUNCTION—CONSTRUCTION OF BUILDING.

> One who has taken a lease of a building to be constructed according to certain plans may obtain an injunction pendente lite forbidding its intended construction according to a different plan.

2. INJUNCTION—AFFIDAVITS.

> On a motion for an injunction pendente lite forbidding defendant, who has given a lease of a building to plaintiff, to be constructed according to certain plans, from constructing the building otherwise than in accordance with such plans, affidavits submitted on the motion *held* not to show that complainant had consented to the construction of the building otherwise than in accordance with plans.

> Ingraham, J., dissenting.

Appeal from special term, New York county.

Suit by Thomas J. Backes against James P. Curran and others. From an order denying plaintiff's motion for an injunction pendente lite (73 N. Y. Supp. 937), plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Warren Leslie, for appellant.

George Fielder, for respondents.

PATTERSON, J. In denying the application for an injunction pending suit, the learned judge at special term (73 N. Y. Supp. 937) placed his decision upon the ground that the plaintiff was, in effect, asking for the specific performance of an agreement for the construction of a building, and that the injunction prayed for was to prevent a building from being constructed in any other way than in accordance with certain plans and specifications, by which he would be furnished with a store in that building of a certain character and dimensions. The facts appearing upon the motion are very simple, and are well established, so far as the plaintiff's right is concerned. Under contracts he was entitled to have a lease of a corner store on the large plot of ground mentioned in the complaint. It appears that, in order to secure that store, he had taken from the Astor estate a lease of the whole plot. That lease was transferred by assignment until it finally became the property of the defendant Curran. Running through all the transfers, the plaintiff's right to a corner store in a building to be erected was recognized and preserved, and that he has a right to some kind of a store at that corner

is not disputed by these defendants. The plaintiff had plans and specifications for that store prepared by his architect, and these defendants knew of those plans and specifications. The plaintiff never abandoned his right to the store, and, while he may have assented to a theater being erected upon the whole plot, it is apparent that he never waived in any way his right under his contracts, which was of vital importance to him, namely, the securing, for the preservation of his business, a store suitable for that business at the corner of the plot of ground he had acquired originally from the Astor estate solely with that object in view. That specific performance of an agreement to furnish a store of particular dimensions in a building not existing but to be constructed would not be affirmatively decreed, is a proposition which does not apply, and that proposition does not militate against the power of the court to restrain the defendants from violating rights which have been secured to the plaintiff by his contracts, and subject to which rights the transfer of the lease of the whole premises to the defendant Curran was made; and this particularly in a case in which it would be impossible to recover adequate damages at law. Even where specific performance will not be decreed, an action may properly be maintained for an injunction against the breach of contracts. Standard Fashion Co. v. Siegel-Cooper Co., 30 App. Div. 564, 52 N. Y. Supp. 433, affirmed in 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, 68 Am. St. Rep. 749. Here the plaintiff parted with his lease of the whole plot, taking back a sealed contract that he was to have the store in any building to be erected. There are no express negative covenants binding the defendants, but that does not affect the jurisdiction of the court. The authority is stated in Pom. Spec. Perf. Cont. § 24, as follows: "The rule has since been extended to cases in which the contract contained no negative stipulation, and it is now settled that such a negative clause is not a necessary prerequisite to the exercise of jurisdiction." This is said of contracts for personal services, but the principle is the same in this case. I think it is clear that the plaintiff would be entitled to relief in this action, and the merits of this case loudly call for it. An injunction should have been issued. The order should be reversed, with costs, and an injunction pending suit granted, to prevent the defendants from constructing a building in such a way as to deprive the plaintiff of the right to a store of the character and dimensions and situation of that projected upon the plans prepared by his architect.

Order reversed, with $10 costs and disbursements, and motion for injunction granted, with $10 costs to abide event. The amount of the undertaking to be determined upon settlement of order.

VAN BRUNT, P. J., and HATCH and LAUGHLIN, JJ., concur.

VAN BRUNT, P. J. (concurring). The plaintiff, under his contracts, was entitled to a corner store on the northwest corner of Forty-Fifth street and Broadway, 20 feet 11 inches wide and 56 feet long, the store floor to be one step up from the street, and the ceiling to be 14 feet high, with a cellar underneath, in a building to

be erected upon said premises. The defendant Curran is engaged in the construction of a building, the floor of the store to be erected upon the corner (which is the locality covered by the plaintiff's lease) being from 4 to 7 feet below the level of the street, and the ceiling in front being 11 feet high and in the rear 7 feet high,—the ceiling in front, therefore, being only from 4 to 7 feet above the level of the street, and in the rear either level with the street or 3 feet above it,—there being a conflict in the defendants' affidavits as to the height of the ceiling above the street. It is claimed, among other things, that the plaintiff is not entitled to any relief in this action because of this intended violation of his contractual rights upon the ground that it is established by the affidavits of three persons, who swear in clear and precise terms that the plaintiff consented to accept this store in a basement below the level of the street, with a ceiling running from 11 feet in front to 7 feet in the rear, in place of the store provided for by his contract, one step up from the street, and with a ceiling 14 feet high. The judge below who passed upon this application did not believe any such improbable story, but based his denial of the application upon a supposed rule of law which governed his action, in which view of the law we do not concur. An examination of the record in this case shows, not only that there are not three persons who swear that this plaintiff ever consented to take this hole in the corner in lieu of the store for which he held a contract, but that there is not one that has had the temerity to swear that he ever consented to any change or alteration in the plans with knowledge that the store that the defendants intended to construct was of the character above set forth. It may be proper, before considering all the affidavits of the defendants in detail, to call attention to one of them, namely, that of Mr. Farnsworth, the architect who prepared the plans for the building being erected by the defendants upon the site in question. It is intended by these plans that above the store of the plaintiff a theater should be built, and the affiant states that these plans show that the floor of the plaintiff's store is to be 4 feet below the level of the sidewalk and that there are to be six steps down; that the height of the ceiling in front is to be 11 feet and in the rear 7 feet, this slope being caused by the necessity of an incline in the orchestra floor of the theater. By this plan the ceiling in front of the store would be 7 feet above the level of the street, and in the rear 3 feet, making it a basement store, instead of a store upon the street level. But, according to Farnsworth's own affidavit, such a construction is against the building laws. He says:

"The building laws do not allow the main entrance floor of a theater to be more than four steps above the street, and consequently it became necessary to push downward the store space that was to be underneath the main floor of the theater unless the store that would be in the building were allowed to usurp a good share of the first floor space therein."

In other words, that they had to shove the plaintiff's store down into the cellar in order to get their theater above it; and, according to his own interpretation of the building laws, with steps of the same rise as those referred to by him, the ceiling of the store

could not be more than three feet above the level of the sidewalk at its highest part, and would be a foot below the sidewalk in the rear of the store. If the building laws did not allow but four steps up for the entrance of the theater, it is difficult to see how the defendants are going to get the top of the ceiling of the plaintiff's store seven feet above the sidewalk, which would require ten steps to the entrance at least. This discrepancy is not at all accounted for in the defendants' papers.

It will now be necessary to consider the affidavits of the three affiants stated to have sworn that the plaintiff agreed to accept this basement store in perference to one raised one step above the street level. As before stated, not only are there not three affiants who have so sworn, but there is not one of the affidavits read upon the part of the defendants upon the motion which even hints at such a thing; and there are only two persons (not three) who claim ever to have had any conversation with the plaintiff upon the subject of his lease. The answering affidavits read upon the part of the defendants were those of Leander S. Sire, H. O. Heuer, James M. Farnsworth, James A. Melvin, Southrick Hebberd, and Samuel H. Huxford. Upon this subject the affiant Sire swears as follows:

"As a matter of fact, I did personally attend to a considerable extent, on behalf of the assignee of the lease, to the negotiations which led up to the assigning of the lease to him. It was openly stated by me and by the assignee of the lease that the sole and only purpose of acquiring this leasehold estate was for the purpose of erecting a theater thereon; and the real-estate broker who attended to the transaction on behalf of the assignor of the lease and the assignor himself stated to me frequently at different conversations which we had during the pendency of the negotiations that Mr. Backes, the plaintiff herein, was fully cognizant of the fact that the defendant Curran was taking an assignment of this lease for the express purpose of erecting a theater thereon, and that he had stated that he had no objection to the erection of a theater thereon, even though the store plan for his store would have to be materially changed, because, as it was stated to me, the plaintiff had the idea that, although he would not get as desirable a store perhaps in appearance, yet its close proximity to the theater would very materially increase the volume of his business."

It therefore appears that Sire had no conversation with the plaintiff upon this subject; that all the information he had was derived from the broker, Mr. Melvin, and the assignor, Mr. Heuer; and neither of them swear that the plaintiff ever told them that he consented to the change because he had the idea that, although he would not get as desirable a store in appearance, yet its close proximity to the theater would increase the volume of his business.

The next affiant is Mr. Heuer, who does not pretend in his affidavit that he ever had any conversation with the plaintiff showing that a theater was to be erected on the premises, or that the store was to be changed in any respect. He states as follows:

"This deponent informed the plaintiff in this action that he (deponent) intended to have a new set of plans and specifications drawn for said building to be erected upon said premises by T. R. Cutler, architect; that, after such plans and specifications had been prepared by the said T. R. Cutler, the said T. R. Cutler informed deponent that the said Thomas J. Backes called at the office of the said T. R. Cutler, and examined said plans and specifications, and raised no objections thereto; that said plans and specifi-

cations so prepared for deponent by the said T. R. Cutler were thereafter filed in and approved by the building department of the city of New York."

It is shown by the affidavit of Cutler that the plans and specifications which he prepared for Heuer and are referred to by Heuer, and to which the plaintiff made no objection, gave him the store which his contract called for.

The next affiant is Mr. Farnsworth, who does not pretend to have had any conversation with the plaintiff; and his affidavit is devoted to a criticism of the affidavit of Cutler, who prepared the plans of the building which was to be erected upon the premises according to the plaintiff's contract, and to an attempt to show that a store below the level of the sidewalk was just as light as a store which is raised above the level of the street,—a claim which hardly seems worthy of consideration.

The next affiant is Mr. Melvin, the broker who had charge of this transaction and is referred to in Mr. Sire's affidavit. He is the first person who pretends to have had any conversation with the plaintiff in respect to any change to be made in the store which he was to get under his contract. He swears that he saw the plaintiff, and stated to him that he had a customer who would be willing to take an assignment of his (plaintiff's) lease from the Astors, and that his object in taking an assignment thereof was to erect a theater thereon; that the plaintiff informed him that he had already assigned the lease to Heuer, and had no further interest in the premises, except that Heuer had given him a lease on the corner store in the building; and that plaintiff did not care what kind of a building would be erected thereon, provided he got a store located on the corner of Broadway and Forty-Fifth street, and he told the affiant where he could see Mr. Heuer. Here there is no intimation whatever that the plaintiff intended to waive any of his rights connected with the store which he was to get. The plain interpretation of the language is that he did not care what was done with the rest of the building so long as he got his store. Mr. Melvin further states that he saw the plans which had been prepared for Heuer for the building which he said he was going to erect on the premises, and that, after he had seen these plans, in one of his conversations with the plaintiff "I stated to him that, if my customer should purchase the leasehold estate from Heuer, that the plans for the building would have to be materially modified and changed, and that the store which he desired to get would probably be below the grade of the street, and not as shown on the plans in the possession of Heuer. Said plaintiff stated to me that that would not make any material difference to him as long as he got a store in the corner of the building to be erected." Here is not the slightest intimation that the store in question was to be a basement store, and not one substantially on the street level, although it might be a little below it, and gave no indication that the ceiling was to be lowered from 14 feet to 11 feet in front and 7 feet in the rear. It does not seem to me that any such conversation as that can compel the plaintiff to give up the valuable lease which he had of this corner store, or otherwise go down into a cellar to do his business. This is one of the affidavits upon the statements in which is built up the no-

tion of depriving the plaintiff of the valuable rights he had acquired under his contract.

The next affidavit is that of Mr. Hebberd, who does not pretend to have had any conversation with the plaintiff upon this subject.

The last affidavit is that of Mr. Huxford, and to what does he swear? He states that he is a real-estate broker, and that he had heard that the building in which plaintiff at that time had his store was going to be torn down, and that he had also heard a rumor that the plaintiff had disposed of his leasehold interest in the opposite corner, and with these rumors in mind he called upon the plaintiff to ascertain whether an opportunity might afford itself for him to transact some business in his line with the plaintiff towards find-- ing him another place of business. The affidavit then proceeds:

"Deponent's conversation with the plaintiff therefore took this turn: Deponent learned from the plaintiff that he had made a transfer of his interest in the corner opposite his store, and that plaintiff understood that the parties who then had control of said leasehold interest were going to erect upon the property a theater. In this connection the plaintiff stated to deponent that he could not say as yet whether he would want to provide himself with any different quarters than those which he expected to have in the theater building which he understood the parties were going to erect on the said leasehold premises, and for which quarters the plaintiff had already made provision. As yet, however, the plaintiffs stated that he was not sure but what the parties who were designing to erect the theater building were going to make some change in their style of building that would necessarily affect the dimensions and style of store which plaintiff had originally devised for himself before he parted with his leasehold, by locating his store one or two steps below the street level, and by changing it somewhat otherwise; but plaintiff stated that, even if the original plan of building were to be thus deviated from so as to suit the designs for a theater, and if the result of so doing were not to give the plaintiff all that he expected, yet he thought that the prospect of having his drug store in a theater building would be worth so much to him in a business way as to largely compensate for possible disadvantages his prospective store on the premises might possess in other respects if such disadvantages should arise by reason of the departure from the original structure plans. Plaintiff also remarked that he might, after all, change his mind, and conclude to sell out his lease on the store, if he got a good price, but said that, if he did sell it, he should expect to receive $20,000 or $25,000 as a figure."

Mr. Huxford nowhere states, nor is there any pretense, that he in any way communicated this conversation to any of the defendants. And, further, it is conclusively proved by the evidence offered by the defendants that the plaintiff never understood, and never had any reason to suppose, that the store which the defendants proposed to erect was to be more than two steps below the level of the street; and that anything was ever said to him which could bear that construction there is not a particle of evidence. And this is the last affiant upon this subject.

It seems to be established, therefore, as stated at the commencement of this opinion, that not only are there not three affiants, but there is not one, who has testified that the plaintiff in this action in any way consented to the giving up of his store with a 14-foot ceiling, a step above the street, for one in a basement or cellar with a ceiling either level with the street or a little above it, and reduced in height in some parts of the store from 14 to 7 feet;

and there are only two affiants who pretend to have had any conversation with the plaintiff in regard to the question of any change of plan, and none of them attempts to swear that he was ever told what those changes were. It is said that there is only the affidavit of the plaintiff to contradict those of the three affiants, who would be guilty of flat perjury if the plaintiff did not give this consent to a store four feet below the level of the street. It is shown that there are only two who swear to any conversation, and that neither of them would be guilty of any perjury had the plaintiff not consented to the change which it is proposed to make in the plan of his store. Furthermore, it is said that the oath of the plaintiff is the only thing which is opposed to that of these supposititious establishers of a consent. Not a particle of weight would be given to the fact that this plaintiff comes into court with a written contract, recognized throughout the whole of this transaction, and which still exists, and entitles him to these rights. A man with a written contract has some rights which the half oath of a witness may not wipe away.

On the subject of the right of the plaintiff to maintain an action for injunctive relief I concur in the views of Mr. Justice PATTERSON.

PATTERSON, HATCH, and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). I think the court below was justified in refusing to grant a temporary injunction restraining the improvement of this property upon the ground that there is no explicit covenant by the defendants to construct the store leased to the plaintiff according to the Cutler plans and specifications, which had been prepared by direction of the plaintiff for the improvement of the property. The relief demanded in the complaint is that the defendants, their agents and servants, be enjoined and restrained from erecting a building on the land described, so far as the first story and cellar is concerned, otherwise than in accordance with the plaintiff's plans and specifications made by one Cutler, an architect, and the order appealed from denies a motion made by the plaintiff for a temporary injunction pursuant to this prayer of the complaint. It appeared that the plaintiff had leased a piece of property upon the corner of Forty-Fifth street and Broadway, upon which he intended to erect a building which would provide him with a store on the corner 20 feet and 11 inches in width and from 56 to 60 feet in depth. He caused plans for the erection of a building to be prepared which provided for a building two stories high, and then transferred the lease to one Heuer, who executed to the plaintiff a lease of a store on the corner of Forty-Fifth street and Broadway, 20 feet and 11 inches in width and 60 feet in depth on Forty-Fifth street and 56 feet in depth on the southerly side of said store. This lease contains no express covenant that the lessor should erect upon the premises a building in accordance with the Cutler plan; on the contrary, it would seem to have been understood that the building to be erected was to be changed, and the assignee of the lease had

Cutler, the architect, make such changes. The changed plan was
seen by the plaintiff, to which he made no objection. The plaintiff
does not claim, as I understand it, that the defendants were bound
to erect the building designed by the original Cutler plan. It is only
the store as shown on that plan that it is claimed that the defendants
are bound to provide. After the provision for the lease of a store,
describing it by metes and bounds, the term is fixed at 10 years at the
yearly rent of $2,500, and then comes the following provision:

"But the said rent shall not be due and payable until the completion of
the said store according to the specifications of T. R. Cutler, architect, now
in possession of each of the parties hereto, by the party of the first part,
and the occupancy thereof by the party of the second part. at which time
the said annual rent, at the rate of twenty-five hundred dollars per annum,
shall commence to run; it being understood and agreed that no rent shall
be due from the lessee to the lessor until such completion and occupancy."

The form of this covenant is suggestive as to the intention of the
parties. The lease that is given to the plaintiff is of a store of certain
dimensions, but without any provision as to its height, or its relation
to the level of the street. It is simply to be a store on the corner of
Forty-Fifth street and Broadway 20 feet and 11 inches in width
and from 56 to 60 feet in depth. A store in the building on the cor-
ner of the street of these dimensions would satisfy this requirement
in the lease, whether it was slightly above or below the level of the
street, or whether the ceiling was of a uniform height of 14 feet or
11 feet in front and 7 feet in the rear. It was clearly contemplated
that the lessor was to erect a building upon the premises the lease of
which had been assigned to him by the plaintiff, for in no other way
could he fulfill the covenants contained in his lease; but as to just
what height the ceiling should be, or as to whether the level of the
store should be above or below the surface, there was in the lease
no express condition. The further provision of the lease that the
said rent should not be due and payable until the completion of the
store according to the specifications of T. R. Cutler, architect, it
being understood and agreed that no rent should be due from the
lessee to the lessor until such completion and occupancy, is the only
provision in the lease referring to the Cutler plans. This provision
gave to the plaintiff a privilege, but in terms imposed no obligation
upon the lessor. Before the plaintiff could be compelled to pay any
rent under the lease, the store had to be completed according to the
Cutler plans; but this is quite different from an express covenant on
behalf of the lessor to erect a building or store according to the
Cutler plans and specifications. The supplemental agreement exe-
cuted between the lessor and lessee, which provides that the plain-
tiff was to be given possession of the premises leased by him not
later than October 1, 1901, contains no reference to the dimensions
of the store, and no reference to the building that was to be erected
upon the premises. The transfer of this lease from the plaintiff's
lessor to the defendant Curran, by which Curran covenanted and
agreed that he would carry out the covenants and agreements made
by the plaintiff's lessor with the plaintiff and other persons to whom
portions of the building to be erected upon the premises had been

leased, refers solely to the obligations contained in the lease to the plaintiff and to certain additional covenants relating to the plumbing in the building. Taking all of these instruments together, I cannot find any specific covenant to construct a store of any particular height, or at the level of the street; and while the plaintiff would be under no obligation to pay rent unless a store was constructed in accordance with the Cutler plans, I can find no covenant sufficiently definite to justify a decree of specific performance, either directly or indirectly, by an injunction restraining an erection of a store other than that provided for by the Cutler plan. It may be that upon the trial the evidence will show such a state of facts as would justify the court in finding that this lease, indefinite as to the store to be erected, contemplated the erection of the store according to the Cutler plan, and in such case the court could give to the plaintiff some relief; but in such a case, if the defendants took an assignment of the lease without knowledge of any other agreement than that contained in the lease, and that agreement did not require a store according to the Cutler plan, I do not see how the court could require them to provide such a store. Upon the facts as they now appear, I think the court was justified in refusing to tie up this building by a temporary injunction, and thus prevent the improvement of this property.

I think, therefore, the order appealed from should be affirmed.