[No. 21215. Department Two. December 31, 1928.]

HARRY BOYER et al., Appellants, v. THE CITY OF YAKIMA, Respondent.[1]

[1]Reported in 273 Pac. 188.

*Grady & Velikanje,* for appellants.
*Dolph Barnett* and *Rigg & Venables,* for respondent.

HOLCOMB, J.—Appellants sued to enjoin respondent from forfeiting and cancelling a contract that they had with respondent to construct a concrete reservoir and its appurtenances. A temporary restraining order was issued, enjoining any attempt to cancel and forfeit the contract, and upon a preliminary hearing an injunction was granted pending suit.

At the trial of the case on its merits, the court denied a motion for a nonsuit based upon the ground that appellants had an adequate remedy at law, and at the close of all the testimony, the court concluded that, although appellants, at the time the attempt was made to cancel and forfeit their contract, had been and were complying with its terms, and that the acts of respondent in attempting to do so were wrongful, plaintiffs had an adequate remedy at law, had chosen the wrong remedy and therefore dismissed their action with prejudice. Costs were not allowed to either party.

From the judgment of dismissal and denying injunctive relief, this appeal arises.

Although this was an action in equity, for the accommodation of appellants, the court made very complete findings, and no statement of facts is brought here. The only question to be determined is whether the judgment of dismissal and denial of equitable relief is justified by the findings.

At every stage of the proceedings, respondent, by appropriate motions and objections, contended that appellants had no right to injunctive relief and were limited to an action at law for damages as an adequate remedy.

The findings disclose that respondent had caused a vote to be taken by the people for the purpose of au-

thorizing the issuance of bonds by the municipality, the bonds to be sold to buy and construct additions to the water system of respondent, and the proceeds to be placed in a special fund to pay for same.

Such authority having been granted by the vote of the people, the bonds were issued and sold, the proceeds placed in a special fund, appellants became the successful bidders and were awarded the contract by respondent to construct a concrete reservoir. They let subcontracts for doing some of the work and entered into contracts for furnishing material and equipment. They installed machinery to do the work and contracted with skilled labor and a superintendent for services covering the period of their contract.

On October 3, 1927, while the contract was being properly performed by appellants, respondent passed a resolution declaring its intention to forfeit and cancel the contract, take over the work and use the machinery and materials of appellants to complete the work.

It was further alleged and found that this action, if taken, would greatly injure appellants in their reputation and credit as construction contractors in this state and other northwestern states where they carried on their business, and that this could not be ascertained and measured in money damages; that appellants would be obliged to breach the contracts with subcontractors, materialmen, skilled laborers and superintendent, which would subject them to claims for damages for breach of contracts in amounts which could not be ascertained; that a substantial part of the special fund created by the sale of bonds had already been expended and there was not sufficient in that fund with which to pay the amounts due and to become due and owing upon existing contracts for construction work and materials, and that the special fund was not

sufficient to pay the costs and expense of the completion of the water system and as to that fund the municipality was and is insolvent.

The court further found that appellants had complied with their contract, and were so complying when respondent passed its resolution, and that the action and threatened action of respondent was arbitrary, wrongful, capricious, unjust and without cause or provocation.

The errors relied upon for reversal by appellants, all based upon the holding of the trial court that appellants had an adequate remedy at law for damages, are argued together under one contention. That contention is that respondent had no right to arbitrarily breach the contract, when appellants were complying with it, by declaring it forfeited, and that appellants are entitled to an injunction enjoining such threatened breach.

Texts and authorities are then cited to support the proposition that a breach of contract may be enjoined when the remedy at law is not adequate *(Washington Cranberry Growers Ass'n. v. Moore,* 117 Wash. 430, 201 Pac. 773, 204 Pac. 811, 25 A. L. R. 1077; *American Electric Works v. Varley Duplex Marget Co.,* 26 R. I. 295, 58 Atl. 977; 3 A. & E. Annot. Cas. 975 and note; *Lanyon v. Garden City Sand Co.,* 223 Ill. 616, 79 N. E. 313, 32 C. J. 187, and 14 R. C. L. 381); and that in every construction contract like this there is an implied covenant that if the contractor carries out his contract the other party thereto will not interfere with or breach the same, and that it is just as effective as if this covenant were in express terms; that this rule applies to the breach of the implied negative covenants in a contract: 32 C. J. 189; 22 Cyc. 846; *Dwight v. Hamilton,* 113 Mass. 175; *General Electric Co. v. Westinghouse Electric Co.,* 151 Fed. 664; *Beatty v. Coble,* 142

Ind. 329, 41 N. E. 590; *Backes v. Curran*, 69 App. Div. 188, 74 N. Y. Supp. 723.

The text of 32 C. J., *supra*, relied upon, reads:

"A contract affirmative in form often involves a negative in substance, and in such case the court will import the negative quality and enjoin acts in breach of the contract, in cases where an injunction is otherwise proper. The test is not in the form of the language used, but in the quality of the acts required. Where one has agreed to do a thing in a certain manner, the negative may be imported that he will not do it otherwise; . . ."

The above text and the authorities cited thereunder, by appellants, are under the head of injunctions. The beginning of the section from which the quotation is made, reads:

"Where the contract is negative in form, requiring a party to refrain from doing certain things, injunction is ordinarily the appropriate equitable remedy. But the breach of a contract will not be enjoined merely because it is negative in form in case it is affirmative in substance." 32 C. J. 188, § 283.

Examples given by the text writer in the same section are in the cases of contracts to cultivate in a certain manner, or to construct a building according to certain plans, or to keep buildings in repair, or to preserve timber.

In such cases violation of the implied negative covenants not to do the things contracted for should, of course, be enjoined, where the other party has no adequate remedy in damages. The mere difficulty in computing damages is not alone a ground for the interference of equity. 32 C. J. 188.

Appellants then advance the postulate that, if the party to a contract who threatens to breach it is insolvent, the remedy in law for damages is inadequate and equity will protect him by injunction; citing

22 Cyc. 773; 32 C. J. 63, 64, 187, 188; *Lanyon v. Garden City Sand Co., supra; State ex rel. Marshall v. Superior Court,* 119 Wash. 631, 206 Pac. 362.

There is no doubt, under the findings of the trial court, that, so far as the special fund provided for the construction of the water-works and appurtenances in question is concerned, it has already been depleted in excess of the amount of bonds sold and that fund is insolvent.

The question then arises, Have appellants any right of action for damages for the arbitrary, wrongful and unjust violation of their contract by respondent? Appellants contend that they are confined, in any form of action which they may have, to the special or trust fund, and that this court has twice so held, citing *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998, and *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837.

In those cases we held that the municipality was restricted to the special fund method of acquiring public utilities, when it had proceeded under the statutes therefor, and could in no event make the general fund liable for additions, betterments or extensions *(Uhler v. Olympia, supra),* or for extras added under the contract which permitted the same. *Wright v. Tacoma, supra.*

Those cases are far from deciding the particular question involved here.

Respondent cites a number of our decided cases to the general effect that, where the municipality or its officers have so misappropriated or diverted a special fund that the special fund has become so depleted that it cannot be held available, the remedy of the injured party for a wrong of that kind would ordinarily be for an action sounding in damages for the injury suffered to the extent of such misappropriation of the special fund (citing *Quaker City National Bank v. Tacoma,*

27 Wash. 259, 67 Pac. 710; *Jurey v. Seattle,* 50 Wash. 272, 97 Pac. 107; *International Contract Co. v. Seattle,* 69 Wash. 390, 125 Pac. 152, on rehearing, 74 Wash. 662, 134 Pac. 502, and the cases therein cited).

In the first two cases, there was misapplication of the special fund, or a part thereof. In the instant case, there is no misapplication of the special fund, for it has been exhausted.

Those cases are authority, however, for the rule that, where there is a misapplication of the special fund or the special fund has been made unavailable, a party having the right to resort to the special fund under a contract has then the right to an action *ex delicto* for his damages, which requires proof independent of the contract. *International Contract Co.* cases *supra; Waldy v. Seattle,* 93 Wash. 407, 161 Pac. 65; *Johnson v. Endicott,* 123 Wash. 1, 211 Pac. 717.

This is a vexatious question, and our rule is contrary to at least considerable authority on that question.

The general rule seems to be to the effect that such an action is *ex contractu.* It is obvious that if the action arises *ex contractu,* appellants are limited in this case to the special fund for their damages, in which case, the special fund being insolvent, appellants would be without remedy unless the breach of the contract be enjoined.

But, having committed ourselves to the principle that such action arises *ex delicto,* where the fund has been diverted or misappropriated to the extent of such depletion, we see no reason why the same rule should not obtain where the municipality has itself terminated the contract, as the court found, arbitrarily, wrongfully, unjustly and without cause.

Donnelly's Law of Public Contracts, § 313, states the law as follows:

"A contractor cannot compel a public body to continue in the work of construction of a building or other structures. A public body, just as an individual may abandon an enterprise which it has undertaken and refuse to allow a contractor to proceed; it may make a new contract or complete the work itself without there being any default on the part of the contractor. But while it is free to violate the contract, while it may refuse to perform or arrest performance it can in no way destroy or get rid of the obligation of the contract. The original contractor has his claim for damages which in the case of the state or nation the legislature or congress would doubtless recognize or in those instances where the right to sue has been conferred, the contractor may sue and recover his damages including prospective profits where the public body prevents performance. While the contract is executory, a public body has the power to stop performance on the other side by an explicit direction to that effect, subjecting itself to such damages as will compensate the contractor for being stopped in the performance on his part at that particular stage of the work. The party thus forbidden cannot go on afterwards and increase the damage. In such case the just claims of the contractor are satisfied when he is fully recompensed for his part performance and indemnified for his loss in respect to the part left unexecuted. The refusal to permit further performance is not a rescission of the contract, but simply a breach for which in an appropriate action he is entitled to recover these damages.

"Where the contract is partly performed and the contractor is prevented from completing the remainder, the contractor is entitled to the contract price for the part which he has performed in accordance with the contract rate, and he is entitled to damages for being prevented from completing the remainder of the contract. Consequently the items which chiefly make up this loss, the outlays which were reasonably made in preparing for performance and the expected profits which were to be gained from performance, are elements of damage and are recoverable as such. In ad-

dition to these chief items of loss he may recover such other items as are included in his special loss. For instance, he may recover a fair allowance for his own time, and where he has brought material to the site or has it on hand for the contract, he may have any loss that has resulted to him thereon. Where the expense connected with getting ready to perform is about the same as actual performance, he may recover from the public body the contract price.''

Hence, respondent had the right to discontinue the contract, either rightfully or wrongfully. In such case it would seem manifest that the other party to the contract would not have the equitable right to enjoin such action by the municipality. The contract having been partly performed, the contractor having been prevented from performing the remainder, he is entitled to the contract price for the part which he has performed in accordance with the contract rate and to damages for being prevented from completing the remainder. The items of such damage are chiefly those stated in the above text.

We have found a few cases resembling the case at bar. *Weston v. Syracuse,* 158 N. Y. 274, 53 N. E. 12, 70 Am. St. 472, 43 L. R. A. 678, bore many similarities to this case. In that state also, the procedure for providing for a special fund and for resort to it, and to compel collection and application with reasonable diligence, seemed at that time to have been about the same as in this state.

In an opinion written by the late Judge Alton B. Parker, it was held that, where a municipality disables itself from performing the contract by such action on its part as makes void, and therefore uncollectible, an assessment for the purpose of providing compensation, or refuses to perform the contract on its part, then an action against the municipality for

the damages sustained by reason of its failure to perform the contract on its part may be maintained.

It also appeared to be the law there, and sustained by the courts, that if the way of payment was prescribed by statute, or by contract, that way must be strictly pursued, as is true in this state.

In *Heller v. City of Garden City*, 58 Kan. 263, 48 Pac. 841, where a city of the second class had municipal power to contract for planting, maintaining and protecting shade trees on its streets, and, for the purpose of paying therefor, to make assessments and collect taxes in the same manner as provided for assessing and collecting taxes for sidewalks, and where the municipality made such a contract, provided for such assessments, and in the contract provided that assessments on the abutting property should be made and accepted as payment of the contract price for the improvement, but when the work was done the municipality repudiated the contract, refused to make the assessments or to take any necessary steps toward providing a fund for the payment of the contractor, it was held that the municipality became liable to pay the contractor the contract price as his measure of damages. In such case it seems obvious that the contract price would be the correct measure of damages.

In *City of New Castle v. Dingle*, 185 Ind. 626, 114 N. E. 221, there was also similar power given to cities to provide for the cost of street improvements and make the abutting owners liable for the cost thereof. The city improperly ordered the contractor for street improvements to remove part of his work and do it over; it was held that it was not necessary for him to refuse to do the work and bring mandamus or an action for labor and material, but he had the right to do it over and sue the city for damages for unlaw-

fully compelling him to do the work a second time. In the course of the opinion the court said:

"The cost of improvements is to be distinguished from the damage done to appellees by the failure of the appellant to do its duty under the contract. Appellees allege that they were compelled to replace portions of the walk because of the failure of the city to do its duty. It is therefore an action to recover for breach of the contract and not for extra compensation under the contract. For this breach of contract appellant is liable in damages." (Authorities.)

So here, there is no action for advancements out of the general fund, or compensation, for extras required, to the contractor, based upon the contract, as in the *Uhler* and *Wright* cases, *supra*. For the wrongful breach of the contract by respondent, it immediately became liable in damages, in such sum as would compensate appellants for being deprived of its benefits.

Respondent states in its brief that we have three times applied the law as pronounced in the *Weston* case, *supra*, particularly citing the *Uhler, Wright,* and *Wade v. Tacoma,* 131 Wash. 245, 230 Pac. 99, cases.

In not one of those cases has the *Weston* case been cited or applied, and after a thorough search, we have been able to find it cited or applied in but one case in this court, *Morehouse v. Edmonds,* 70 Wash. 152, 126 Pac. 419, where it was cited to a different point.

The *Weston* case is, however, a well reasoned case, upon foundations closely like ours, and written by a very able judge. That it is in consonance with the weight of modern authorities, is evidenced by referring to cases upon the general proposition of the right to recover in damages for a present breach of contract as between individuals and as to private corporations, and seems to be well settled.

An exhaustive review of the authorities, both English and American, was made by the United States supreme court in *Roehm v. Horst,* 178 U. S. 1. The following from *Hochster v. De la Tour,* 2 El. & Bl. 678, an English case, from the pronouncement of Lord Campbell, was approvingly quoted:

"The man who wrongfully renounces a contract into which he has deliberately entered, cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured."

We cannot see why the same principle should not apply with equal force to municipal corporations, with respect to acts done in their corporate capacity.

See, also, *Davidson v. Village of White Plains,* 197 N. Y., 266, 90 N. E. 825; *Hockaday v. Board of County Commissioners,* 1 Colo. App. 362, 29 Pac. 287; *Davis v. Bronson,* 2 N. Dak. 300, 50 N. W. 836, 33 Am. St. 783; *Johnson v. Endicott, supra.*

We therefore conclude that appellants must be relegated to their action at law for damages, and that the trial court was right in deciding that they had no right to injunctive relief.

Judgment affirmed.

FULLERTON, C. J., MAIN, and BEALS, JJ., concur.