[No. 28608. Department Two. March 30, 1942.]

THE STATE OF WASHINGTON, *on the Relation of Virginia Rand, Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

[1] Reported in 124 P. (2d) 207.

*A. C. Van Soelen* and *J. Ambler Newton,* for appellants.

*DuPuis & Ferguson* and *Rummens & Griffin,* for respondent.

JEFFERS, J.—Relator in the court below sought to obtain two separate writs of mandate against the city of

Seattle, H. L. Collier, its treasurer, and W. C. Thomas, its comptroller. In case No. 326601 of the records of the superior court for King county, relator, in her application, asked for an alternative writ of mandate directing the above named defendants to forthwith set aside funds of the street railway system into the fund of the system known as the "City Railway Fund," sufficient to pay all principal and accrued interest on all outstanding warrants payable from such fund, previous in order of payment to warrants Nos. 55795, 64076, 64306, and 64307, and including the warrants just mentioned (which are the warrants involved herein and owned by relator), and to pay from the "City Railway Fund" all of the principal and accrued interest of such warrants, or show cause why the same has not been done, or why defendants should not be directed and compelled to set aside such moneys and to pay the owners and holders of those warrants such principal and interest.

In case No. 325310 of the records of the superior court for King county, relator asked for an alternative writ commanding the above named defendants to forthwith set aside funds of the street railway system into the fund of the system known as the "Railway Extension Bond Fund, 1919," sufficient to pay all principal and accrued interest on all outstanding bonds payable from such fund previous in order of payment to bonds Nos. 732 and 744, and including bonds Nos. 732 and 744 (the numbered bonds being the ones involved herein, belonging to relator), and to pay from the "Railway Extension Bond Fund, 1919," all of the principal and accrued interest of bonds previous in order of payment to and including bonds Nos. 732 and 744, or show cause why same has not been done, or why defendants should not be compelled to set aside

moneys into the fund, and pay the owners and holders of such bonds the principal and interest thereon.

In the affidavit supporting the application of relator in the bond case, she referred to ordinance No. 39492, under which the "Railway Extension Bond Fund, 1919," was created, and in the affidavit supporting relator's application in the warrant case, she referred to ordinance No. 33333, under which the "City Railway Fund" was created, and in addition, in each of the affidavits, she specifically referred, by number and title, to ordinance No. 67463, entitled:

"An Ordinance relating to the custody and disbursement of money received as revenue from the municipal railway system and requiring a bond to safeguard its custody and disbursement,"

which ordinance was approved June 19, 1937; ordinance No. 68144, entitled:

"An Ordinance relating to the revenues of the municipal street railway system; creating in the city treasury a special fund designated 'railway emergency operating fund' providing for the payment into such special fund of all such revenues and for the payment therefrom of current operating expenses and of outstanding warrants modifying ordinance No. 33333 accordingly; repealing ordinance No. 67364, and declaring an emergency,"

which ordinance was approved by the mayor March 29, 1938; and ordinance No. 69274, approved by the mayor June 19, 1939. Relator further states in her affidavits that, at all times subsequent to June 19, 1939, defendants have operated the street railway system in accordance with purported ordinance No. 69274. We shall more specifically refer to this ordinance later in this opinion.

On the filing of the applications, supported by the affidavits of relator, the court issued alternative writs

directed to the defendants, requiring them to set aside funds of the street railway system into the respective funds above mentioned, from which the obligations were payable, sufficient to pay the bonds and warrants hereinbefore referred to, and accrued interest thereon, or show cause on February 25, 1941, why the same had not been done.

Defendants filed an answer to each of relator's applications. By their respective answers, defendants admit that they have not paid the bonds or warrants involved herein, or the accrued interest thereon, and allege affirmatively that in August, 1939, the city secured a loan from the Reconstruction Finance Corporation, in order to make continued operation of its street railway system possible, by refunding its outstanding obligations and rehabilitating the system; that, pursuant to ordinance No. 69274, the city secured a loan of $10,200,000 from the RFC, and issued revenue bonds in that sum to secure such loan; that in the ordinance a transportation commission was set up, for the management and control of the new system, with power to act independently of the elected officers of the city; that provision was made for a depository of all the revenue and of all the bond proceeds, to wit, Seattle-First National Bank; that all revenues from the operation of the system were directed to be paid to the depository, and all proceeds of the bonds were directed to be paid to the depository; that all moneys in the city treasury theretofore collected from revenues, except the sum of $300,000, to be held in trust for the payment, at an agreed discount, of the indebtedness referred to in § 4 of the ordinance, were directed to be paid to the depository; that, through the medium of such loan, all of the bonded and warrant indebtedness of the system, as it existed prior to August, 1939, has been compromised and paid according to the terms

of such ordinance, except $33,000 in bonds and approximately $134,484.24 in city railway fund warrants.

It is further alleged that there is no provision of the law by which the city or any of its officers can pay the money in the hands of the depository, except pursuant to the terms of the ordinance and chapter 47, p. 142, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 9488-6 [P. C. § 1238-5] *et seq.*); that the city has no power of appropriation under the ordinance, and neither the city treasurer nor the city comptroller has any funds on hand applicable to the payment of the demands of relator.

The ordinances above referred to were all introduced and admitted in evidence, and are a part of the statement of facts certified by the trial court. By stipulation, the evidence received was made applicable to both cases, and they were tried together. However, separate findings of fact, conclusions of law, and judgments were entered in each case.

The bonds in question were issued in 1919, pursuant to ordinance No. 39492, hereinbefore referred to. They matured September 1, 1939, and have attached semi-annual interest coupons from September 1, 1937, to September 1, 1939, inclusive. This ordinance provided for and adopted a plan or system of additions and betterments to, and extensions of, the existing system, and provided for the issuance of serial revenue bonds in an amount not exceeding $790,000, to pay the cost thereof. The ordinance also created a special fund to be called "Railway Extension Bond Fund, 1919," which fund was to be used for the purpose of paying the principal and interest on these bonds, and the city treasurer was directed by the ordinance to make payment of such bonds and coupons as the same fell due, from the moneys *in the* railway extension bond fund, 1919, and *from no other source.* The ordinance also pledged to

this special fund sufficient of the gross revenues of the railway system to meet the payments of principal and interest as they came due, and further provided that

"  .  .  . said revenues are hereby pledged to such payments of interest and principal, which shall constitute a charge upon such revenues prior and superior to all other charges whatsoever, including charges for maintenance and operation, .  .  . "

and

"The city of Seattle does hereby irrevocably obligate and bind itself to pay from such gross revenues into said special fund, thirty days prior to the respective dates upon which interest, or principal and interest, of the bonds of this issue shall become due, a sum equal to the amount of such interest, or such principal and interest, as the case may be, even though the balance of such gross revenues then remaining, after the payment from such revenues of the amount or proportional part thereof previously pledged to funds for the payment of other obligations, may be insufficient to pay the cost of maintaining and operating said system, and said additions, betterments and extensions."

The four warrants held by relator, dated May 25, 1937, May 29, 1937, June 10, 1937, and June 10, 1937, were issued pursuant to ordinance No. 33333, approved by the mayor July 6, 1914, and were payable from any money in the city railway fund not otherwise appropriated. This ordinance provided:

"Section 1. There is hereby created and established the City Railway Fund, into which shall be paid all revenues derived from the City Railway Department, and from which shall be paid all expenses of operation and maintenance of the city railway system."

We shall not refer to ordinances Nos. 67463 and 68144, other than to say that their effect was to deny to the holders of bonds issued pursuant to ordinance No. 39492 the gross revenue security pledged, and to divert

the gross revenue from the city railway fund from which warrants of the class held by relator were payable, for, after the passage of ordinance No. 67463, on June 19, 1937, no revenue from the system was deposited in either the railway extension bond fund, 1919, or the city railway fund.

Ordinance No. 69274, under which the street railway system of the city is now being operated, was approved by the mayor June 19, 1939. Legislative authority for ordinance No. 69274 was derived from Rem. Rev. Stat. (Sup.), § 9488-6 [P. C. § 1238-5] *et seq.*, which law was passed in 1939 (Laws of 1939, chapter 47, p. 142). The various provisions of this ordinance completely reorganized the financial and operational scheme of the city's railway system. Certain provisions were made for the payment at discount and without interest of bonds and warrants then outstanding, but they were not to be paid or redeemed by money paid into either the railway extension bond fund, 1919, or the city railway fund, payments into both of those funds having been discontinued. The ordinance made the Seattle-First National Bank depository for the several funds therein created.

The "Transportation System Revenue Fund" was created, and that ordinance provided that all revenues thereafter received from operation of the transportation system should be deposited in this fund daily, in the name of the city of Seattle, and that all street railway money theretofore paid into the city treasury, with an exception not here material, should be paid into the revenue fund. The city comptroller was authorized to disburse, by check drawn upon the revenue fund, on vouchers approved by the commission, such amounts as were proper, within the budget then in effect, for the ordinary and necessary operating and maintenance expenses of the system, and to pay in-

terest due prior to August 1, 1941, on bonds issued pursuant to ordinance No. 69274.

The ordinance also created a fund to be known as the "Bond and Interest Retirement Fund," to be used only for the payment of principal and interest upon bonds to be issued pursuant to the provisions of the ordinance. This bond fund was to be maintained by certain fixed amounts of money to be set aside periodically out of the gross revenues from the system. It was expressly provided that this bond fund should be held by the depository in trust for the holders of the bonds authorized by the ordinance and the coupons appertaining thereto, and that neither the city nor the transportation commission should have any beneficial interest or right in such fund.

A "Transportation System Renewal and Replacement Fund" was also created, into which money in the revenue fund should be transferred periodically, after transfers had been made to the bond fund. The purpose of this renewal fund was to pay the costs of renewals and replacements of properties and equipment of the system. The depository was authorized to honor disbursement orders of the city comptroller made against this fund, provided there should have been delivered to the depository a certificate showing that such disbursements had been duly approved by resolution of the commission.

There was also created the "Transportation Revenue Bond 1939 Construction Fund," into which were to be paid the proceeds from the sale of bonds issued pursuant to the ordinance, exclusive of premium and accrued interest. The money in this fund was to be used exclusively for the purpose of paying the costs of the improvements of, and the additions and betterments to, the system, and for the further purpose of funding and refunding, *at an agreed discount and without*

*interest,* bonds and warrants of the classes held by relator. No money could be withdrawn from the construction fund for the retirement of bonds or warrants such as held by relator, unless the expenditure was certified by the mayor, and it was further provided that *no withdrawals from the construction fund,* for any purpose, should be made unless there had been filed with the depository a certificate by an authorized agent of the RFC, approving the request for withdrawal made by the mayor or the general manager, provided, however, that such certificate was not required unless and until the RFC had notified the depository in writing of the designation of such agent.

The trial court considered relator's applications on their merits, having before it the pleadings and ordinances hereinbefore referred to, and the testimony of one witness, Mr. I. Comeaux, chief city accountant and financial adviser to the city. A memorandum opinion was filed, wherein the trial court, after referring to the provisions in the bonds themselves as to payment, stated:

"The warrants, the collection of which is sought here, were each drawn on the 'City Railway Fund,' which fund was established by ordinance No. 33333, and into which was to be paid all revenue from the municipal street railway. Payment of these bonds and warrants is refused by the treasurer of the city of Seattle for the stated reason that no money is to be found in the 'Fund' on which they are drawn.

"These 'Funds' are empty for the reason that the city, by later ordinance, in effect, abolished the 'Fund' by directing the deposit of the street railway income into other 'Funds' and a 'Depository;' in short, the city has diverted the income from the 'Fund' which was pledged to a new 'Fund' which in turn was pledged for later indebtedness which permitted the reorganization of the transportation system. . . .

"The relator here maintains that this procedure amounts to a diversion by the city of a fund established

for her benefit, and is without effect as to her, and that the diversion being wrongful and a violation of a contract to pay, establishes a liability on the general fund of the city, and that the unpaid bonds and warrants have been specifically validated by the statute, § 2, chapter 47, Laws of 1939, that authorized the refinancing of the street railway. . . .

"The respondent city maintains that although $33,000 in bonds and $134,484.24 in city railway fund warrants remain unpaid, the pledging of the gross income to the Reconstruction Finance Corporation as security for an advance of $10,200,000 leaves no funds with either the treasurer or comptroller in the city railway fund, and in the absence of funds there can be no mandate requiring payment.

"It is the law that the holder of a bond or warrant may maintain a mandamus action, and it is likewise true that any misappropriation by the city of money belonging to a special fund will render it liable generally to the holders of warrants drawn upon the special fund to the amount of money so misappropriated; this is the effect of the opinion in *Zinser v. Vancouver*, 192 Wash. 622 and *State ex rel. Titlow v. Centralia*, 93 Wash. 401."

In finding No. 4 in the bond case, the trial court found:

"That at all times subsequent to June 19, 1937, the defendants failed, neglected, and refused to deposit funds in the Railway Extension Bond Fund 1919 sufficient to pay interest and principal on said bonds, or any sums whatsoever, and that the defendants have deposited moneys from the street railway in other funds in complete disregard of the covenant contained in relator's bonds."

Finding No. 5:

"That subsequent to June 19, 1937, the gross revenues of the City of Seattle Street Railway have exceeded the sum of Sixteen Million Dollars; that since August 1, 1939, the street railway system has operated at a profit to the City of Seattle, and that the City of Seattle has sold certain of its old equipment and re-

ceived in payment therefor the sum of $228,000.00; that there are only thirty-three $1,000.00 bonds, including relator's bonds now outstanding, which were outstanding on February 1, 1939, and that the said bonds, both principal and interest, could be paid in full from the funds of the street railway on hand from any one of the above mentioned sources. That at the time of the commencement of this action and at the time of trial the defendant city had railway funds unexpended in excess of the total amount of bonds and warrants now outstanding that were outstanding on February 1, 1939."

Finding No. 7 is to the effect that the bonds have been presented for payment, and payment refused, and that defendants admit they will continue to refuse to pay into the railway extension bond fund, 1919, from the gross revenue of the system, or from the net revenue, or from the construction fund, or trust fund, or any other fund, sums sufficient to pay the principal and interest of such bonds prior in order of payment to and including relator's bonds.

From the foregoing findings, the court concluded:

"1. That relator has no plain, speedy, or adequate remedy in the ordinary course of law.

"2. That the relator is entitled to a peremptory writ of mandate compelling the defendants to pay the relator's bonds, both principal and interest, in full."

Judgment was entered in the following form:

"Now, therefore, it is hereby ordered, adjudged and decreed that thirty days from the date hereof, or, if appeal be taken herefrom, immediately after the filing of the remittitur from the supreme court, if judgment of this court is affirmed, a peremptory writ of mandate do issue out of and under the seal of this court to the defendants herein commanding and directing them to pay the relator's bonds, both principal and interest, in full."

The findings in the warrant case are to the same general effect as those in the bond case, except that

reference is made to ordinance No. 33333 as the authority for the warrants issued. The conclusions of law are the same as in the bond case, and the form of the judgment is the same. From these judgments, defendants have appealed. The two cases were briefed and argued as one.

In view of the statement made in the court's memorandum opinion, regarding the general liability of the city, the apparent theory of respondent, as indicated by her applications, that appellants be compelled to set aside funds from the railway system into the railway extension bond fund, 1919, sufficient to pay the principal and accrued interest on all outstanding bonds of the class held by her, and set aside funds from the system into the city railway fund, sufficient to pay all principal and interest on all outstanding warrants payable from such fund previous in order of payment to and including the warrants held by respondent, and the form of the judgments entered herein, wherein appellants are simply directed to pay the bonds and warrants, both principal and interest in full, no specific direction being given as to from which of the several funds, or in just what manner, payment should be made, it is difficult to determine upon what theory the court found the appellants liable.

Appellants have made no specific assignments of error, and respondent therefore contends that the findings of fact made by the trial court must be accepted as the established facts in the case, and the only question presented, then, is whether or not, as a legal proposition, the findings of fact support the conclusions of law and judgment.

In neither of the cases do the findings of fact, conclusions of law, or judgment refer specifically, by number or title, to ordinance No. 69274, under which the city railway system is now being operated, and under

which all revenues now received from the system are held by a depository, in special funds created by the ordinance.

■■ No specific assignment of error having been made in appellants' brief, we are confronted with the question of whether we must accept, as the facts in the case, the findings as they appear, or whether we may look to and examine ordinance No. 69274, it not having been specifically referred to in the findings, for the purpose of determining whether or not in these actions the court had the authority to direct that payment of the bonds and warrants and accrued interest be made from any of the funds created by the ordinance.

We think an entirely different situation might be presented as to the right of respondent in these actions to reach the revenues of the railway system, if such revenues were deposited in the city treasury, where they would be subject to disbursement by the proper city officials, than would be presented in a case where, as under ordinance No. 69274, such revenues are deposited with a special depository in certain named funds, from which disbursements can be made only under certain conditions provided in such ordinance.

These are mandamus proceedings, the purpose and theory of such actions being to compel public officials to perform a duty imposed upon them by law. It, of course, is not the purpose of such a proceeding to compel a public officer to perform some duty which he cannot legally perform.

Finding of fact No. 4 in the bond case recites that appellants "have deposited moneys from the street railway *in other funds.*" Finding of fact No. 3 in the warrant case recites that appellants "have deposited city railway moneys *in recently created funds.*"

Certainly, in order to reach a solution of the legal

problems here presented, it is necessary to determine what legal control appellants have over the funds into which the revenues of the city railway system are now deposited, and particularly whether or not the treasurer and comptroller, individually or together, have the authority to disburse money from such funds.

We are mindful of rule XXI, Rules of the Supreme Court, 193 Wash. 28-a, and we are firmly of the opinion the rule is a salutary one, and that it is a dangerous practice for counsel to omit a definite assignment of error. In the instant case, we are of the opinion the omission is not fatal. Our conclusion is based upon the facts that from the record it appears conclusively that the trial court had ordinance No. 69274 before it; that it is apparent that appellants' contention at the trial was that all the revenues of the railway system were being deposited in special funds with a depository, as provided under ordinance No. 69274; and that, under the provisions of such ordinance, none of the appellants had authority to disburse money from such funds for the purpose of paying the bonds and warrants involved herein, and accrued interest thereon. The contention that the court erred in attempting to compel appellants to pay the principal and accrued interest on the bonds and warrants involved herein, from any of the funds provided for by ordinance No. 69274, or from the general fund, so conclusively appears from appellants' brief that a specific assignment of error could not have more definitely called to the attention of the court the error complained of.

We think the following cases support our decision to consider the error which appellants contend the trial court committed, and in so doing to consider ordinance No. 69274: *Chandler v. Cushing-Young Shingle Co.*, 13 Wash. 89, 42 Pac. 548; *Wilson v. Aberdeen*, 25 Wash. 614, 66 Pac. 95; *State ex rel. Powell v.*

*Fassett,* 69 Wash. 555, 125 Pac. 963; *Smith Sand & Gravel Co. v. Corbin,* 89 Wash. 43, 154 Pac. 150; *Gunstone v. Walker,* 157 Wash. 475, 289 Pac. 53. We are of the opinion our conclusion is not contrary to anything stated in *LeCocq Motors v. Whatcom County,* 4 Wn. (2d) 601, 104 P. (2d) 475.

In view of the form of the judgments in the instant case, it becomes necessary to test them under each of the several theories hereinbefore referred to. We shall first assume that the judgments were meant to imply that the writs should include direction for the setting aside of moneys into the special funds from which these obligations were payable according to their tenor, and that payment then should be made from the special funds; that is to say, that the writs should be made out according to respondent's theory, as stated in her applications.

We think it apparent that relief of this character could not be granted in the present action, because several of the parties defendant, necessary to the granting of such relief, are not before the court. All moneys from the railway system are at the present time, and were when these actions were instituted, under ordinance No. 69274, held in special funds by the Seattle-First National Bank, as depository. Under the provisions of that ordinance, it does not appear that the city treasurer or comptroller, acting by themselves, either individually or together, have any power to make disbursements from any of the special funds created by the ordinance, for the purpose of transferring the same to the now defunct railway extension bond fund, 1919, or the city railway fund.

Furthermore, we assume, without so deciding, that before relief in this form could be obtained, it would be necessary to judicially determine that ordinance No. 69274, which purports to effect a diversion of the

gross revenue of the railway system to the prejudice of respondent's interests, is invalid, in so far as it attempts to authorize such diversion.

Undoubtedly, in a suit by a party specially damaged, or where personal or property rights have been affected injuriously by an ordinance, courts do have the power to restrain the enforcement of such ordinance, if it is invalid. *Hayes v. Seattle,* 120 Wash. 372, 207 Pac. 607. However, in the instant case, neither respondent nor appellants have raised or considered the question of the validity of the ordinance from which the city claims authority to make the diversion. Under these circumstances, we do not deem it proper herein to determine this constitutional question.

We next assume that the judgments were entered on the theory that the writs should command the appellants to satisfy respondent's bonds and warrants directly out of other existing special funds containing street railway system moneys. It may be that respondent has some right to relief of this general character, on the theory that revenues which first had been pledged to the payment of bonds and warrants held by her had been diverted to these other special funds. As to this right, however, we express no opinion, because it is clear that, in these proceedings, recovery is sought only from the particular funds chargeable therefor, according to the terms of the obligations. We think it equally apparent that these appellants lack authority to comply with the terms of such writs, when other parties necessary to the disbursement of the special funds are not before the court.

Finally, we assume that the trial court intended that the writs should direct appellants to make payment from the general fund of the city, in accordance with the court's view as expressed in the memorandum opinion. It is true that in a number of cases decided

by this court we find a statement to the effect that, where the city by misappropriation exhausts a special fund, the city renders itself generally liable to the holders of obligations drawn on such special fund, to the extent that the misappropriation or diversion has injured such individuals. *Quaker City Nat. Bank v. Tacoma,* 27 Wash. 259, 67 Pac. 710; *Perkins v. Sidney,* 103 Wash. 595, 175 Pac. 301; *Matapan Nat. Bank v. Seattle,* 115 Wash. 596, 197 Pac. 789; *Boyer v. Yakima,* 150 Wash. 421, 273 Pac. 188. We express some doubt, however, as to the application of this general rule to the diversion by the city of Seattle from any of the special street railway system funds here involved, because of the views of this court expressed in *Asia v. Seattle,* 119 Wash. 674, 206 Pac. 366, where we held that bonds and warrants payable out of the city railway system's revenue could not, by any act of the city or its officials, be made a charge directly or indirectly upon the general fund of the city.

However that may be, the rule is firmly established that, as a condition precedent to the enforcement of such general liability against the city, a claim must be filed within the time limited by law. *Jurey v. Seattle,* 50 Wash. 272, 97 Pac. 107; *Perkins v. South Bend,* 133 Wash. 349, 233 Pac. 655. Where the damages are of a continuing character, such as the daily diversion of revenues in the instant case, it would seem that a claim might be filed for damages which had accrued during the claim filing period immediately preceding, and for prospective damages. *Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334. There was no showing in this case that any claim whatsoever had been filed at any time.

We are further of the opinion that the general fund of the city cannot be reached by mandamus proceedings against the city or its officers to pay obligations of this character, where there is no showing that

any of the moneys from the special funds have been diverted to the city's general fund. In *Quaker City Nat. Bank v. Tacoma, supra,* we stated:

"Unless, therefore, some special fact is alleged, in addition to the fact of misappropriation, showing a liability to pay out of its general fund,—such, for example as the appropriation of the money from the special to the general fund,—mandamus will not lie to compel the city or its treasurer to pay this class of warrants out of the city's general fund."

Respondent's contentions on this appeal are summarized in her brief as follows:

"It is apparent that this court has many times enunciated the rule that the proper remedy for a warrantholder or a bondholder, where funds are available, is mandamus to compel the payment of said bond or warrant, . . ."

and

"The court having found that there were monies in several railway funds available for the purpose of paying respondent's bonds and warrants, each of which had sufficient monies on hand to pay all of the bonds and warrants including relator's bonds and warrants, it was sufficient to permit the issuance of the writ to the appellants without designating which particular railway fund the warrants and bonds should be paid from, upon the presumption that the appellants would not violate the law, and would pay the bonds and warrants from the proper fund."

The difficulty in sustaining respondent's position is that, by her own allegations and the findings of the trial court, it appears that there are no moneys in the particular funds obligated to the payment of respondent's bonds and warrants, and have not been since about June 10, 1937. It does not appear in this case that "funds are available," and that the officers are refusing payment without cause.

126

From what we may have said herein, we do not wish to be understood as holding that respondent may not, in an appropriate proceeding, when all the necessary parties are before the court, be entitled to relief of the character sought in her applications in this case. Quite the contrary. In this opinion, we are deciding only that the court is without power or authority to grant such relief in the present proceedings, because the parties now before the court cannot lawfully accomplish that which the judgments below contemplate they should be directed to do.

For the reasons herein stated, the judgments appealed from are reversed, and the causes remanded with directions to the trial court to dismiss respondent's applications, without prejudice to any further proceeding in this matter.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.