[No. 29090.   Department One.   November 4, 1943.]

MINNIE E. WAPPENSTEIN, *Respondent,* v. OSCAR SCHREPEL, *Appellant.*[1]

[1]Reported in 142 P. (2d) 897.

*Donn F. Lawwill,* for appellant.

*A. D. Gillies,* for respondent.

STEINERT, J.—Plaintiff, while crossing a street intersection in the city of Aberdeen, was struck by an automobile driven by the defendant. She brought suit for damages for the injuries sustained by her and, in a trial before a jury, was awarded a verdict in the sum of twenty-five hundred dollars. Judgment was entered upon the verdict, and the defendant appealed.

No question concerning appellant's negligence or respondent's contributory negligence is presented upon this appeal. Appellant's assignments of error relate solely to certain exhibits consisting of medical and hospital bills, which respondent, over the objection of the appellant, was permitted to introduce in evidence as proof of the expenses incurred by her in the care of her injuries. We therefore will state only those facts which are pertinent to the question to be considered.

At the time of the accident, on October 17, 1940, respondent was sixty-eight years of age. Prior to that time, in May, 1939, while residing temporarily with her daughter near Redlands, California, respondent had consulted a physician, to whom she complained of tiredness, obesity, and chronic constipation which required constant, daily use of laxatives. Upon examination by the physician, she was found to be suffering from high blood pressure registering a systole of 260 and a diastole of 130, indicating a hypertensive, cardiovascular disease, commonly known as hardening of the arteries. She remained under the doctor's care for three or four months, and by the end of that period her blood pressure was reduced to its normal state.

She returned to her home in Aberdeen in August, 1939, and in that month, it appears, was again treated for high blood pressure by a local physician. In the following year, she took a trip east with her daughter. While in Indiana she purchased an automobile which was used in making the return trip to Aberdeen, the driving being done by the

daughter. Shortly after her return to Aberdeen, respondent met with the accident involved in this action.

According to the allegations of her complaint and the evidence in support thereof, respondent sustained severe bruises, contusions, and wrenching of muscles in her left ankle, in the sacroiliac region, along her spine, and in the area leading from her collar bone to the back of her skull. She also alleged that as a result of her injuries she suffered a kidney infection and a lighting up of an arthritic condition of the thoracic and lumbar vertebrae of her spine.

An examination by a physician on the day following the accident revealed that no bones had been broken. However, respondent remained in bed, or in her room, for about a month, and during that time she suffered a great deal of pain. The medical expense incurred during that period is not now disputed by the appellant.

In December, 1940, respondent accompanied her daughter, in the automobile which she had purchased, to the daughter's home near Redlands, California. She sought no further medical attention from the time she arrived there until some time in February, 1941, when she again consulted Dr. Hall, the physician who had first treated her for high blood pressure. She complained to him of tiredness, of pains in her back, under her right rib margin, and in her extremities, and of sleeplessness; but she made no mention at that time of the accident which had occurred a few months before. Upon examination by Dr. Hall, she was found to have a recurrence of high blood pressure, registering a systolic expansion of from 220 to 230. She was given a course of treatment which continued until June, 1941, and resulted in a reduction of her blood pressure. The pains in the various parts of her body continued, however, throughout the period of the treatment.

Some time in April, 1941, Dr. Hall, having then been informed by respondent of the accident, began a further search for the cause of her pains. Upon making certain tests he found that she had an infection of the right kidney, caused by a contraction of the ureter. She was thereupon.

placed in a hospital where she remained for a period of four or five weeks. During that time she was given treatments consisting of dilating the ureter and the use of medicines and antiseptics.

In September, 1941, Dr. Hall took X-ray pictures of respondent's spine and found an advanced condition of arthritis. Treatment for that ailment was given from that time until July, 1942. During that same period the doctor amputated one of the toes of respondent's right foot.

Respondent alleged in her complaint that, in the treatment consequent upon her injuries, she had incurred medical and hospital expenses amounting to $1,164.60. She testified that she had been treated for high blood pressure, kidney and liver trouble, constipation, and arthritis; that her toe had been amputated; that she had spent much time in the hospital; that X-ray pictures had been taken of her spine; and that she had bought medicines and other medical supplies. She offered in evidence certain weekly statements of account sent to her by Dr. Hall and by the hospital, also canceled checks and receipts, covering a large part of her alleged expenditures. These were admitted as exhibits, over appellant's objections. The amount thus accounted for was approximately $830.

It was not shown by any evidence, however, that the high blood pressure, the kidney or liver trouble, or the constipation was caused or aggravated by the injuries sustained in the accident; nor was it shown how much of the time spent in the hospital was for treatment and care of those ailments. The statements received from the doctor were made up of items listed generally as "treatment and hypo," hospital calls, kidney study, kidney wash, dilation, renal test, removing toe, laboratory, and X-ray picture, with a specific charge for each item. There was proof that these charges for the respective items as such were reasonable, but there was no proof of what proportion of the charges related to one ailment or another. The same is true with reference to the weekly statements rendered by the hospital. Appellant objected strenuously to the admission

of these exhibits until and unless it were shown what portion of the medical and hospital charges was for treatment of the ailments and impairment caused by the collision.

During the course of the trial the court ruled that evidence concerning the amputation of the toe was improper, on the ground that it covered a matter not alleged in the complaint. The court also instructed the jury that the respondent had failed to prove that she had suffered a kidney infection as a result of the accident. It further appears from the evidence that the high blood pressure, the liver trouble, and the constipation had been of long standing prior to the accident and were not caused thereby. Nevertheless, the court admitted the foregoing exhibits covering the charges grouped as a whole, without any attempt at segregation.

It is apparent that the jurors had no way of determining to what extent the charges were properly allowable, and therefore they were compelled to resort to speculation and conjecture upon that subject. It is equally impossible for us to determine how much of the general verdict was allocated to expenses incurred for treatments and hospital services occasioned by the injuries sustained in the accident. Furthermore, it is impossible for us to say whether or not, in fixing the amount of its general verdict, the jury was influenced by a consideration of the total amount of respondent's medical and hospital bills for all of her ailments, regardless of their relevancy to the injuries sustained as a result of the collision.

Where pecuniary damages are sought, there must be evidence not only of their actuality but also of their extent, and there must be some data from which the trier of the fact can with reasonable certainty determine the amount. Where there is evidence as to injuries or loss resulting from various causes, for some of which the defendant cannot be held responsible, but no evidence of the portion of such injuries or loss for which the defendant may be liable, the proof is too uncertain to enable the jury to determine the

amount of such injury or loss. *Lantz v. Moeller,* 76 Wash. 429, 136 Pac. 687, 50 L. R. A. (N. S.) 68; 25 C. J. S. 496, Damages, § 28.

■ Respondent points to the fact that the court instructed the jury that there could be no recovery for the effects of disease existing before or arising since the accident if such effects were not the natural and probable consequence of appellant's negligence; that only the accident and its natural results could be considered by the jury in arriving at its verdict; and that the law permits only such recovery as will pecuniarily compensate a person for the injury sustained by him. These instructions may have been entirely correct as general statements of the law, but they did not reach the situation presented here. The immediate question is not as to the correctness of the instructions under which a verdict is returned, but rather one as to the admissibility of the evidence upon which the verdict is based.

■ Respondent contends that the general verdict should be allowed to stand because the appellant made no request for special findings on the subject of medical bills and hospital expenses. Appellant was not required to make such request. It was the burden of the respondent to prove her case by admissible and competent evidence.

■ Finally, respondent argues that, on appeal, this court looks more to the effect of error than to the mere fact of its commission, and that when, on a consideration of the entire record, the judgment is plainly right, it will not be reversed. All of respondent's argument in these respects may in a general way be true, but in this instance the argument begs the question to be decided. It does not appear from the record that the errors committed did not affect the merits, nor does it appear that the judgment, in so far as the amount of the verdict is concerned, is "plainly right." The jury was allowed to consider evidence that was inadmissible, and to take into consideration expenditures for which the appellant was not liable, and which, if considered,

would in all probability influence the jury in determining the seriousness of the injuries resulting from the accident.

The judgment is reversed, with direction to the trial court to grant the motion for a new trial.

SIMPSON, C. J., JEFFERS, MALLERY, and GRADY, JJ., concur.

