[No. 2553–3. Division Three. December 27, 1978.]

LESTER N. JOHNSON CO., INC., *Respondent,* v. THE CITY OF SPOKANE, *Appellant.*

*John Madden, Acting Corporation Counsel,* and *Linda M. Youngs, Assistant,* for appellant.

*Winston & Cashatt, Patrick A. Sullivan,* and *Joel C. McCormick,* for respondent.

GREEN, J.—Plaintiff, Lester N. Johnson Co., a contractor, brought this action seeking damages against the defendant, City of Spokane, for breach of a sewer construction contract. After trial to the court, judgment was entered for plaintiff in the amount of $28,239 plus post–judgment interest and costs. Both parties appeal.

The appeals raise the following issues: (1) Did the City breach the construction contract? (2) If so, does the contract limit the contractor's remedy for the breach to an extension in time? (3) If not, did the trial court adopt a proper method of calculating the damages? (4) Are the damages payable from the City's general fund or L.I.D.

funds? and (5) Is the contractor entitled to prejudgment interest?

Lester N. Johnson Co. (hereinafter referred to as "contractor") was the low bidder for the construction of a defined sanitary sewer in the city of Spokane. In December 1974, the contractor and the City entered into an agreement in which the contractor agreed to build the sanitary sewer for $63,142, to be paid only from Local Improvement Fund, District No. 6570 created by assessments against the property included within the District.[1]

The contractor commenced work on February 12, 1975. The project lay in a drainage basin and, consequently, substantial ground water was encountered which slowed the progress of its work. Towards the end of February, a spring thaw and rain aggravated this condition. Then, on March 1, the City started pumping raw sewage from a nearby overloaded sanitary sewer into a field uphill from the project area. The pumping continued 24 hours a day until March 5. This action was necessary to keep the affected sewer from backing up into the homes of certain Spokane residents. On March 10, 1975, the contractor wrote a letter to the City in which it claimed that the pumping had created a condition not anticipated by either party. Specifically, the contractor alleged that the raw sewage and water had seeped from the field down into the contractor's work site, causing equipment to mire down in mud and disrupting the contractor's work plans. The City denied that a changed condition existed under the contract, and the contractor proceeded with construction, making the adjustments necessary to work in the saturated ground. Although the contract called for completion of the project within 45 working days, the contractor did not finish its work until June 17. The City does not seek damages for the delay and the trial court

---

[1]The contract incorporated the "Standard Specifications for Municipal Public Works Construction, Washington State Chapter, American Public Works Association, 1969", the "Supplemental Specifications to Standard Specifications for Municipal Public Works Construction, 1971", the "Special Supplementals to Standard Specifications" and the bid plans, maps and drawings.

found the City had waived its claim, if any, for damages resulting from the delay.

On August 25, the City council adopted an ordinance approving the assessment roll for the local improvement district. The amount of the assessment was based upon the contractor's final invoice for $64,257. Subsequently, on October 6, the contractor filed a written claim with the City clerk for damages and extra cost arising from its performance of the sewer contract. On October 20, the contractor commenced this action, alleging that (1) the ground water was an unanticipated sub–surface condition, and (2) the City's pumping of raw sewage constituted interference with its work. In this action, the contractor sought $67,613 in damages. The court denied damages based on the ground water allegation[2] but granted damages for the City's interference with the contractor's work.

First, the City contends that it did not breach any terms of the contract. Instead, it argues that the contract expressly authorized the type of activity which occurred here. We disagree. Recent cases have recognized that there is an implied term in every construction contract that the owner or the person for whom the work is being done will not hinder or delay the contractor. *Bignold v. King County*, 65 Wn.2d 817, 399 P.2d 611 (1965); *V.C. Edwards Contracting Co. v. Port of Tacoma*, 83 Wn.2d 7, 13, 514 P.2d 1381 (1973); *Seattle v. Dyad Constr., Inc.*, 17 Wn. App. 501, 517, 565 P.2d 423 (1977). Here, the trial court found that the pumping significantly interfered with the contractor's work site. The surface water seepage from the pumping caused the contractor's equipment to mire down in the mud creating problems requiring the contractor to incur additional expense and to perform additional work in order to meet its contract obligations. These problems were not

---

[2]Although the project area lay in a drainage basin, neither the contract nor the bid plans mention ground water. The court found that the contractor was familiar with ground water problems in the area and anticipated the presence of some ground water.

within the contemplation of the parties at the time the bids were made or when the contract was executed. Therefore, the court properly concluded that the City had breached its implied duty under the contract not to hinder the contractor in the performance of its work. Based on this conclusion, the court properly proceeded to determine and award damages to the contractor. The trial court's finding is amply supported by the testimony of Thomas Johnson, then vice–president of the contractor. He was present at the work site during the times in question. His testimony constitutes substantial evidence in support of the trial court's finding, and the finding, in turn, supports its conclusion that the City had breached the contract.

Nor are we persuaded by the City's argument that paragraph 21 of the parties' agreement, which reserves to the City the right to perform other work at or near the work site,[3] expressly authorized the activity which took place here. It is not reasonable to assume that the contractor committed itself to perform this job and at the same time agreed to allow the City to substantially interfere with its work. The provision contemplates those inconveniences encountered whenever two separate groups of workers must operate in proximity to each other. Here, the City's actions resulted in more than an inconvenience. Rather, those actions made it nearly impossible for the contractor to accomplish its work. Accordingly, we hold that paragraph 21 of the agreement did not authorize the City to interfere with the contractor's work in the manner in which it did here.[4]

---

[3]Paragraph 21 provides:

"The OWNER reserves the right to perform other and additional work, by contract or otherwise, at or near the site of this work, including material sites, at any time during the performance of the work."

[4]The City also argues that section 5.04 of the Standard Specifications entitled "Interference With Other Contractors" applies:

Second, the City asserts that the contract limits the contractor's remedy for this type of breach to an extension of time. The contract incorporates the "Standard Specifications for Municipal Public Works Construction, Washington State Chapter, American Public Works Association." Section 9.02 of the standard specifications states that:

> The Contractor shall accept the compensation, as herein provided, in full payment . . . *for performing all work contemplated and embraced under the contract;* also for loss or damage arising from . . . unforeseen difficulties which may be encountered . . .

(Italics ours.) Section 8.07 of the specifications provides:

> Should the Contractor be delayed in the prosecution or completion of the work by the act, neglect, or default of the Owner . . . then the time herein set for the completion of the work shall be extended for a period equivalent to the work time lost by reason of . . . the causes aforesaid.

The trial court found that neither party contemplated that the contractor would have to work under the conditions caused by the City's breach, and, therefore, the court concluded that the remedy for the breach was outside the scope of the contract.

---

Bidders are required to inform themselves fully of the conditions relating to construction and labor under which the work will be or is now being performed, and the Contractor shall employ, as far as possible, such methods and means in the carrying out of his work as will not cause any interruption or interference with any other Contractor or agency.

If the performance of any contract for the project is likely to be interfered with by the simultaneous execution of some other contract or contracts, the Engineer shall decide which Contractor shall cease work temporarily and which Contractor shall continue, or whether the work under the contractors can be coordinated so that the Contractors may proceed simultaneously. The Owner shall not be responsible for any damages suffered or extra costs incurred by the Contractor, resulting directly or indirectly from the award or performance or attempted performance of any other contract or contracts on the project, or caused by any decision or omission of the Engineer respecting the order of precedence in the performance of the contracts other than for an extension of time.

We do not find this section applicable. Here, another contractor on the same project did not interfere with the plaintiff's work; it was the City itself. Neither did the engineer enter the situation as contemplated by this provision.

Two recent decisions have addressed the question of whether a contractor may collect damages for owner–caused delay or interference when the only remedy prescribed by the contract for such a breach is an extension of time. *See Nelse Mortensen & Co. v. Group Health Coop.*, 90 Wn.2d 843, 586 P.2d 469 (1978), which adopted the opinion of the Court of Appeals found at 17 Wn. App. 703, 566 P.2d 560 (1977); and *Seattle v. Dyad Constr., Inc.*, 17 Wn. App. 501, 565 P.2d 423 (1977). In *Nelse Mortensen,* the contractor sued the owner, alleging, among other things, that incomplete plans, excessive errors in contract documents, and lack of project approval from the required authorities unreasonably delayed the contractor's work. The court reviewed several earlier Washington decisions in this area and concluded that the courts have abandoned the contract terms in favor of recovery in quantum meruit only when the owner–caused delay in construction was of a nature not contemplated by the parties. Since Nelse Mortensen, an experienced hospital contractor, should have foreseen the type of difficulties which in fact occurred, the court applied the contract provision and refused to award the contractor damages. *Nelse Mortensen & Co. v. Group Health Coop., supra* at 726–27. *Accord, Christiansen Bros., Inc. v. State,* 90 Wn.2d 872, 586 P.2d 840 (1978), in which the court also held that the parties had contemplated the owner–caused delays and had provided a remedy therefor in their contract.

On the other hand, in *Dyad Construction,* the contractor sought damages resulting from the active interference of the City of Seattle in the manner and method of its performance. The *Dyad* court specifically found that the City did not have the right under the parties' contract to direct the particular manner of operation or to require particular methods of construction. Nor was the City's interference justified, as Dyad Construction was proceeding in a proper and workmanlike manner. Because this interference and the resulting delay were not contemplated by the parties at

the time they entered into the contract, the court allowed damages. *Seattle v. Dyad Constr., Inc., supra* at 519.

■ Here, neither the City of Spokane nor the contractor could have contemplated that the City would interfere with the performance of the contract by pumping raw sewage into an area which drains into the contractor's work site. This act is different in kind from the acts of the owner in *Nelse Mortensen, i.e.,* acts which relate directly to the construction which is the subject of the contract. For example, parties to a construction contract can be expected to foresee that a contract document might contain an error that requires a change in plans. In contrast, those parties cannot always be expected to foresee that actions taken by an owner on a different project will substantially interfere with the progress of the contractor's work. This is particularly so where the project was non–existent and not within the contemplation of the parties at the time the contract was signed. Therefore, we hold that the owner interference which occurred here was outside the scope of the contract, and that the City is liable for damages to the contractor.[5]

Third, the City claims that the trial court improperly calculated the contractor's damages. The court found that the contractor had incurred $26,160 in extra expenses for equipment, labor, and materials as a result of the City's pumping. The court also awarded the contractor $2,079 for overhead and profit. The basis of the findings is the testimony of Thomas Johnson, who explained to the court

---

[5]In its brief, the City alleges that the contractor could have greatly diminished its costs if it had sought authority from the city engineer to shut down the project until conditions improved. The City argues that the contractor cannot recover losses it could have mitigated. The record does not support the City's position. To the contrary, the record demonstrates that, at the time, both parties felt it was better to continue with the job. The trial court specifically found that the techniques utilized by the contractor to overcome the conditions imposed by the pumping were reasonable, and the City has not assigned error to this finding. The City was aware of the wet conditions of the jobsite, but did not exercise its right to suspend the work. It cannot now, with the benefit of hindsight, urge that the contractor should have requested a time extension.

plaintiff's exhibit 1, the contractor's revised claim for damages. That revised claim compared the number of days the contractor had proposed to spend on the job with the number of days the contractor had, in fact, taken to complete his performance, thereby identifying that portion of the expenses which were truly "extra." The claim then allocated these extra expenses among three causes: poor weather conditions, ground water, and the City's pumping. In estimating the reasonable costs of the extra work, both Johnson and the trial court adopted the formula set out in the "force account clause" of the construction contract. This clause sets rates for extra work in those situations where the parties agree that the work is within the scope of the contract but cannot reach an agreement on the proper rate of pay for the work. The City argues that the court erred when it (1) adopted the contractor's formula for estimating the amount of extra work performed, (2) used force account rates in computing the cost of the extra work, and (3) awarded the contractor profit on those extra costs.

The City disputes Mr. Johnson's testimony concerning the number of days planned for performance and the number of days actually required for performance, and also questions the percentage of the extra work Mr. Johnson allocated to the City's pumping. Where the court is convinced substantial damages have been incurred, the injured party will not be denied a remedy in damages because the exact amount of those damages is uncertain. *V.C. Edwards Contracting Co. v. Port of Tacoma*, 83 Wn.2d 7, 15, 514 P.2d 1381 (1973). In its oral opinion, the trial court stated:

> You have a value judgment that probably is subject to dispute and that is, how much time was involved here, and how should the cause of this added time be apportioned. In that respect my conclusion is based on the fact that quite frankly I was impressed by the candor exhibited by Mr. Johnson. I think he was trying to be reasonable, trying to be fair.

While the City disagreed with the contractor's formula for estimating the amount of the extra work, it failed to demonstrate that this formula was erroneous. We hold that Mr. Johnson's testimony provided a reasonable basis for the court's estimate of damages.[6]

■ Nor did the trial court err when it used force account rates to assess the cost of the extra work. When substantial changes occur which are not covered by the contract, were not within the contemplation of the parties, and result in extra work, the doctrine of "quantum meruit" provides an appropriate basis for recovery. *Bignold v. King County, supra* at 826. The City acknowledges that quantum meruit is the proper measure of damages here, but argues that the trial court, by utilizing the rates suggested in the force account clause of the contract, improperly substituted a contractual remedy. We disagree. The trial court found that the amounts resulting from application of the force account rates constituted the reasonable value of the additional work required of the contractor. The testimony of Mr. Ben Kurz and Mr. Jeff Kuney, construction experts called by the contractor, supports this finding of reasonableness. Since the term "quantum meruit" literally means "as much as deserved", *see Bignold v. King County, supra* at 826, any method of calculating costs which results in a reasonable estimate of the value of the additional work is proper. Here, the trial court did not apply the contractual remedy of force account;[7] it merely adopted the force account method as a reasonable basis for calculating the

---

[6]The City asserts that exhibit 1, the contractor's revised claim for damages, was admitted for demonstrative purposes only and is not evidence. We find no error. The trial court based its conclusions on the testimony of Mr. Johnson, who explained the revised claim, not upon the revised claim itself. Where facts can be ascertained only by inspecting numerous records which cannot conveniently or satisfactorily be examined in court, the court may properly allow a qualified person to state the result of his examination of these records and use a summary of it to illustrate his conclusion. *Keen v. O'Rourke*, 48 Wn.2d 1, 5, 290 P.2d 976 (1955).

[7]In arguing the contrary, the City referred to statements made by the trial judge in his oral opinion. Such statements, when at variance with the findings, cannot be used to impeach the findings or judgment. *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963).

reasonable value of the work performed.

■ Finally, the City argues that the court's award of profit to the contractor was error because the court did not enter a finding that the contractor would have made a profit but for the breach. It is true that the presence of ground water would have cut into the contractor's profit, even if the City had not breached the agreement. However, the contractor is not seeking recovery for his entire performance. For that performance within the contract, it accepted the contract price. For the extra work occasioned by the City's pumping, the contractor seeks recovery in quantum meruit. Profit is an appropriate factor in determining quantum meruit where no particular circumstances call for its exclusion. *V.C. Edwards Contracting Co. v. Port of Tacoma, supra* at 13. The circumstances here call for an award of profit. Otherwise, an owner could substantially interfere with a contractor's work and incur liability only for the reasonable cost of the extra work which the interference occasions. Such a holding would require a contractor to work without compensation.

■ Fourth, the City asserts that its general fund cannot be held liable for these damages because the parties specifically agreed that the cost of the improvement would be paid from the proceeds of a special assessment levied on the property benefited by the construction.[8] We agree that the general fund of a municipality is not usually liable for the cost of such an improvement. *Pratt v. Seattle*, 111 Wash. 104, 110, 189 P. 565 (1920). However, the contractor here is not seeking extra compensation for its performance

---

[8]The construction contract states:

"Payment shall be in the following manner, to–wit:

"By issuing to contractor its negotiable coupon bonds, installment notes or warrants payable out of local improvement fund, district No. 6570 created in said ordinance No. C–22263, passed the city council October 15, 1974, . . . It is further understood and agreed that owner shall not be liable for the assessment fund hereinabove referred to, or any claim or demand whatsoever against said fund, and that contractor shall look only to such fund for payment, and shall have no claim whatsoever against the owner under or by reason of this contract for the improvement herein provided for except from such fund . . ."

under the contract. The cost of the improvement, for which the special fund alone is liable, must be distinguished from the damages flowing from the City's breach of its implied contractual duty not to interfere with or hinder the contractor's performance. These damages are payable only from the general fund. *Boyer v. Yakima,* 150 Wash. 421, 427, 430–31, 273 P. 188 (1928). Indeed, we would work an injustice if we held the special fund liable in these circumstances. The City's act of pumping out an over–loaded sewer which served an adjoining neighborhood did not result in any special benefit to the district for which the contractor was building a new sewer line. This type of city service is one which is properly borne by all of the residents of the city through the general fund.[9]

The City argues that *Boyer* is inapplicable because there the court specifically found that the city's breach was "arbitrary, wrongful, [and] capricious." We do not believe that such a finding is necessary in order to impose liability on the city's general fund. A finding that the City actively and substantially interfered with the contractor's work in a manner not contemplated by the parties is sufficient.[10]

The contractor, in its cross appeal, assigns error to the trial court's failure to award it prejudgment interest on the damages. The rule in Washington is that interest prior to judgment is allowable (1) when the amount claimed is "liquidated" or (2) when the amount claimed is "unliqui-

---

[9]Because our holding limits liability for these damages to the general fund, we need not consider the City's argument that the contractor waived any right to damages because it did not assert its claim until after the amount of the special assessment had been set. Since the City could not assess the special fund for the contractor's damages, the contractor's delay in filing its claim was in no way detrimental to the City.

[10]The City also contends that the damage award was improper because the trial court did not find that the City was negligent. We note that the trial court did characterize the City's activity as a "semi–tortious" breach of contract. The court did not define this term, but it is evident from the record that it regarded the *contractor's action as one for breach of the City's implied promise not to interfere with or hinder the contractor's performance. Therefore, the action sounds in contract, and no finding of negligence is required to support the award*

dated" but the amount is determinable by computation with reference to a fixed standard contained in the contract. *Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 32, 442 P.2d 621 (1968); *Seattle v. Dyad Constr. Co., supra* at 520. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount owed with exactness, without reliance on opinion or discretion. *Seattle v. Dyad Constr. Co., supra* at 520, citing C. McCormick, *Damages* § 54 (1935).

Here, the contractor's damages are unliquidated and are not determinable by computation with reference to a fixed standard contained in the contract. The trial judge necessarily estimated the amount of damages attributable to the City's pumping. Even the contractor's witnesses admitted that it was impossible to make an exact computation. As Thomas Johnson testified:

> What we are talking about is the ground water, the sewage and water pumped in, and also water brought in by bad weather, and once it's all together *there is no way of distinguishing each individual part of it.*

(Italics ours.) Hence prejudgment interest was properly denied.[11]

Accordingly, we affirm the trial court judgment in all respects.

McINTURFF and ROE, JJ., concur.

Reconsideration denied January 26, 1979.

Review denied by Supreme Court May 4, 1979.

---

of damages. Any alleged deficiency in the contractor's pleading of breach of contract was cured at trial. *See* CR 15(b) which provides, in part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Because the action is for breach of contract, we need not reach the question of whether public necessity mandated the pumping and immunized the City from tort liability.

[11]The contractor cites *United States v. Sargent–Tyee Co.,* 376 F. Supp. 1379 (E.D. Wash. 1974), for the proposition that damages arrived at through estimation may still be liquidated and, therefore, subject to prejudgment interest. We are not bound by the opinion of a federal district court.