[No. 7703-1-I.  Division One.  December 8, 1980.]

STEVEN A. KEYES, *Appellant,* v. ROBERT E. BOLLINGER, JR., ET AL, *Respondents.*

*Yothers & Kostakos* and *Michael Stuart Gillie,* for appellant.

*Sellers & Jones* and *Bruce E. Jones,* for respondents.

SWANSON, J.—This is an action by a home buyer against the contractor who constructed and sold the home. Steven Keyes, who prevailed on part of his claim, appeals the refusal to apply the Consumer Protection Act, the refusal to award attorney's fees and the finding that he had waived any objection to the delay in delivery.

The facts, based upon the trial court's findings, are summarized below. On February 5, 1977, Steven Keyes entered into an earnest money agreement with Robert Bollinger, who is in the business of building and selling new houses, to

purchase a house which was under construction. During construction Bollinger made a number of estimates as to when the house would be completed; each time the house was not ready when estimated. Keyes eventually moved in at closing on July 25, 1977. Although Bollinger had represented the house as being built in conformance with accepted standards of workmanship in the Seattle area, numerous parts of the house were not up to accepted standards.

Keyes thereafter made demands that the defects be repaired; Bollinger made repeated estimates as to when the repairs would be made. In most cases these repairs were not made, and as a result some of the defects became worse.

At the time Keyes moved in, the house had not received a final inspection as required by the Seattle Building Code for occupancy. As a result, a notice was posted on the house saying the house was "unfit to occupy."

To establish his claim under the Consumer Protection Act, Keyes presented evidence of similar incidents involving Bollinger. As to these the trial court found:

22. That MICHAEL ADAMS, C. T. GRUBBS, MICHAEL McKINNY, and APPOLONIO VILLANUEVA are all purchasers of houses built by the defendant within one and one–half years of plaintiff's purchase of his house.

23. That the defendant made repeated estimates as to when the GRUBB, McKINNY and VILLANUEVA houses would be ready, and that the houses were not ready when estimated for the GRUBBS, McKINNYS and VILLANUEVAS.

24. That there were defects in the ADAMS, GRUBBS, McKINNY and VILLANUEVAS houses and that the defendant made repeated estimates as to when the defects would be fixed but usually the defects would not be fixed when estimated.

25. That the ADAMS, McKINNY and VILLANUEVA houses did not have final inspections as required by the Seattle Building Codes when occupied and the ADAMS and VILLANUEVAS had notices posted on their houses similar to that posted on the Plaintiff's house.

26. That the contracts between the defendant and the Plaintiff, the ADAMS, GRUBBS, McKINNYS and VILLANUEVAS were each, respectively, private contracts, each

having unique and varied facts and circumstances. Also, taken altogether, the facts and circumstances of the different contracts do not affect the public interest. The reasons for delays and inconveniences, failure to meet estimated dates, and occupancy prior to final inspection varied from job to job and were not fraudulent or in bad faith or part of any practice of the defendant to deceive or to be unfair. Damages in this case, other than for defective workmanship, would be speculative and not the result of any material acts by the defendant.

The trial court awarded damages of $5,535 to Keyes. It refused to issue an injunction or otherwise apply the Consumer Protection Act, RCW 19.86, finding that "the contracting industry is affected by the public interest but that the public interest is not affected by the particular transactions." No attorney's fees were awarded.

Keyes first argues that the court erred in finding waiver based upon a failure to assert his rights. The trial court found that the house was not ready when estimated and that the closing on July 25, 1977, constituted a delay in delivery which was a breach of contract. Keyes challenges the court's conclusion that by closing he waived his right to damages for the breach.

■ Whether Keyes intended by his actions to waive his right to damages for the delay in closing is a mixed question of law and fact. *Reynolds Metals Co. v. Electric Smith Constr. & Equip. Co.*, 4 Wn. App. 695, 483 P.2d 880 (1971). Although the evidence does not unmistakably establish waiver it does permit the inference. We cannot substitute our findings for those of the trial court. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Keyes next argues that the trial court's findings warrant application of the Consumer Protection Act, RCW 19.86.

RCW 19.86.020 of the Consumer Protection Act provides:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Any person damaged by a violation of RCW 19.86.020 may bring an action to enjoin further violations and to recover

actual damages, including a reasonable attorney's fee. RCW 19.86.090. The act is to be liberally construed that its beneficial purposes may be served but it is not to be interpreted to prohibit acts or practices which are not injurious to the public interest. RCW 19.86.920.

The Consumer Protection Act does not apply to the breach of a private contract which does not affect the public interest. *Lightfoot v. MacDonald,* 86 Wn.2d 331, 544 P.2d 88 (1976). At issue here is whether the public interest was affected. The trial court found that "the public interest is not affected by these particular transactions." Conclusion of law No. 12. It was not surprising that the trial court came to this conclusion. At the time the case was tried, there was indeed authority that the breach of a construction contract did not warrant the application of the Consumer Protection Act. *Pilch v. Hendrix,* 22 Wn. App. 531, 591 P.2d 824 (1979); *see also Grayson v. Nordic Constr. Co.,* 22 Wn. App. 143, 589 P.2d 283 (1978). Our Supreme Court, however, has recently formulated new criteria to determine whether the public interest is affected.

> We believe the presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Anhold v. Daniels,* 94 Wn.2d 40, 46, 614 P.2d 184 (1980). Under these criteria, the trial court's findings of fact would support a conclusion of law that the public interest was affected.

The findings of fact entered by the trial court fail to support the court's conclusion that the public interest was not affected. The trial court found deceptive acts. Bollinger "represented the house as being built in conformance with accepted standards of workmanship in the contracting industry in the Seattle Area." Finding of fact No. 9. In fact,

numerous items were not up to accepted standards. Finding of fact No. 10. Keyes requested that these defects be corrected. Bollinger made repeated estimates which were not met as to when the repairs would be made.[1] As a result, some of the defects became worse. These findings would support a conclusion that the first two prongs of the *Anhold* test were met. The third prong, potential for repetition, also appears to be met. Evidence that others have been injured by similar deceptive representations is sufficient to establish the potential for repetition. *Anhold v. Daniels, supra; Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 589 P.2d 1265 (1979). The trial court's findings of fact Nos. 22 through 25 establish similar deceptive representations.

■ A contractor who erroneously estimates a completion date does not automatically violate the Consumer Protection Act. There is a point, however, where such erroneous estimates may become part of a contractor's regular business practice and be repeated to consumer after consumer. It is the likelihood that additional consumers will be injured in precisely the same fashion that changes a factual pattern from a private dispute to one that affects the public interest. *Cf. Pilch v. Hendrix, supra.*

Viewing this case in light of the test set forth in *Anhold v. Daniels, supra,* we find a disparity between the findings of fact and the conclusion of law that the public interest was not affected. The cause is therefore remanded for reconsideration in light of this opinion and the test set forth in *Anhold v. Daniels, supra.*

Keyes finally argues that he should be allowed attorney's fees under the express terms of the earnest money agreement.

---

[1]The trial court found that the reasons for the delays "varied from job to job and were not fraudulent or in bad faith or part of any practice of the defendant to deceive or to be unfair." Finding of fact No. 26. This finding does not prevent the practices from affecting the public. Proof of intent to deceive is not a prerequisite to suit. *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83 A.L.R.3d 680 (1976).

■ The trial court correctly found that the attorney's fees provision of the earnest money agreement did not apply. The clause provided:

> In the event that either party to this agreement wrongfully fails to perform the terms and conditions on his part to be performed, such party, for the express benefit of the other party and the broker, agrees to pay the broker the commission provided for herein, plus any costs of collection, court costs and attorney's fees.

An earnest money agreement is a contract to close a real estate transaction. The clause in this case refers to attorney's fees incurred in the event it is necessary to enforce the obligation of a party in breach to pay the broker's commission. The transaction was closed, the broker was paid and the earnest money agreement was therefore performed. Although the clause might be susceptible of other interpretations, any ambiguities must be resolved against Keyes, whose agent drafted the contract. *Guy Stickney, Inc. v. Underwood,* 67 Wn.2d 824, 410 P.2d 7 (1966). If on remand, however, the trial court concludes that the Consumer Protection Act does apply, Keyes would be entitled to attorney's fees.

The case is reversed in part and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

JAMES, A.C.J., and DORE, J., concur.

Reconsideration denied January 19, 1981.